## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**HENRY FISHER**                                        **CIVIL ACTION**

**VERSUS**                                              **NO. 06-2858**

**N. BURL CAIN, WARDEN**                                **SECTION "S"(6)**

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. §2254(e)(2). Accordingly, it is recommended that the petition be **DENIED WITH PREJUDICE.**

## I. PROCEDURAL HISTORY[1]

On February 22, 2000, the Jefferson Parish District Attorney filed a bill of information charging petitioner, Henry Fisher, with possession with intent to distribute cocaine. Fisher

---

[1]Much of the procedural history is taken from the Louisiana Fifth Circuit Court of Appeal's opinion, *State v. Fisher*, 852 So.2d 1075 (La. App. 5 Cir. 2003).

was arraigned on February 24, 2000, and pled not guilty.

Fisher filed various pre-trial motions, including a Motion to Suppress the Confession and a Motion to Suppress the Evidence.  The court heard and denied those motions on April 10, 2000.  A jury trial was held and Fisher was found guilty as charged.

On September 29, 2000, the State filed a habitual offender bill of information, alleging Fisher to be a fourth felony offender.  On October 12, 2000, Fisher denied the allegations of the habitual offender bill.

Fisher filed a Motion for New Trial on December 4, 2000, which the trial court denied.  Fisher waived statutory delays, and the trial court sentenced him to thirty (30) years at hard labor and a $50,000 fine.  Fisher made an oral motion for appeal, which the judge granted.  Fisher filed a written motion for appeal on January 9, 2001, and the judge granted it on January 17, 2001.

Fisher's retained attorneys filed a Motion to Reconsider Sentence on January 5, 2001.  Those attorneys were thereafter allowed to withdraw as attorneys of record.  The July 26, 2001 minute entry indicates the hearing on the motion to reconsider sentence was deferred until the day of the habitual offender hearing.  However, it does not appear that the trial court ever ruled on it.  The transcript of the habitual offender proceedings shows that the trial judge inquired as to whether he had ruled on a motion to reconsider sentence.  Fisher's new counsel informed the judge that the motion to which he referred had been filed by Fisher in proper person.  The court denied the motion, along with all other pro se motions.  The question of

2

whether the court ruled on the July 5, 2001 motion is moot, since the motion pertained to Fisher's original sentence, and that sentence was later vacated.

On January 5, 2001, Fisher filed a Notice of Objections to Multiple Bill. Fisher filed a Motion to Quash Multiple Bill on March 5, 2001, challenging the validity of the predicate convictions alleged by the State. Although the record shows the motion was set for hearing, it does not appear that the trial court ruled on it.

A hearing on the habitual offender bill was held on December 13, 2001. On that date, Fisher made an oral motion to quash, arguing the hearing was not timely. The trial court denied the motion. The State elected to amend the habitual offender bill to allege two, rather than three, predicate felony convictions.

The judge found Fisher to be a third felony offender. The judge vacated Fisher's original sentence, and imposed an enhanced sentence of life imprisonment without benefit of parole, probation or suspension of sentence. Fisher objected to the imposition of a life sentence, arguing that the court did not employ the applicable version of the habitual offender statute. Fisher also made a timely oral motion for appeal. He filed a written motion for appeal on December 20, 2001. The trial court granted the appeal on January 8, 2002.

In connection with Fisher's appeal, the Louisiana Fifth Circuit, on July 29, 2003, affirmed Fisher's conviction and life sentence. *State v. Fisher*, 852 So.2d 1075 (La. App. 5 Cir. 2003). Thereafter, the Louisiana Supreme Court denied Fisher's writ application, thereby rendering his conviction final. *State v. Fisher*, 872 So.2d 510 (La. 2004).

Following the conclusion of his direct appeal proceedings, Fisher sought post conviction relief. Fisher's effort in this regard culminated on April 24, 2006, when the Louisiana Supreme Court denied his writ application. *State ex rel. Fisher v. State*, 926 So.2d 533 (La. 2006).

In the instant federal habeas corpus action, Fisher raises the following claims: 1) Trial court unconstitutionally failed to suppress evidence; 2) Trial court unconstitutionally failed to grant a mistrial when police officer made a prejudicial statement; 3) Evidence was insufficient to support conviction; 4) Trial court unconstitutionally failed to quash the multiple offender bill for failure to timely prosecute; 5) Trial court unconstitutionally imposed excessive sentence; 6) He was unconstitutionally denied effective assistance of appellate counsel: 7) Evidence was insufficient to find him to be a third felony offender; 8) Trial judge unconstitutionally acted as a prosecutor during the multiple offender hearing; 9) His constitutional rights were violated by virtue of the fact that the trial judge could not be fair and impartial; 10) Trial court unconstitutionally permitted hearsay testimony; 11) He was unconstitutionally denied effective assistance of trial counsel; and, 12) He was denied his constitutional right to trial when he was found guilty of the multiple offender bill without a trial by jury. In its Response (rec. doc. 9, p. 2), the State concedes that the instant action is timely and that Fisher has exhausted his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982). Before proceeding to the

merits, the court shall review the applicable facts.[2]

## II.  FACTS

Narcotics Detective John Louis of the Kenner Police Department testified that a confidential informant alerted him to narcotics trafficking involving defendant, Henry Fisher. Based on that information, Louis instituted an undercover investigation of Fisher. He obtained Fisher's cellular telephone number, and called him on January 7, 2000. Fisher agreed to sell Louis $600 worth of crack cocaine.

The two men arranged to meet between 5:00 and 5:30 p.m. on January 12, 2000, at Airline Highway and Filmore Street in Kenner.  Fisher told Louis he would be driving a white BMW automobile with a temporary license plate.  Louis waited for Fisher in an unmarked police car at the prearranged place and time.  Fisher arrived in a white BMW, and parked it outside of a trailer at 647 Filmore Street.  Fisher and a child, later identified as Fisher's son, entered the residence.  Louis remained in his car.  Minutes later, Fisher exited the trailer alone and walked towards Louis' car, making beckoning motions with his arms. Fisher told Louis to "come here."

At that point, Louis radioed backup officers in the area and told them to detain Fisher. Once that had been accomplished, Louis went to the trailer at 647 Filmore Street. He spoke with Michael Powers, Fisher's brother-in-law, and the trailer's owner.  Louis identified

---

[2]The facts are taken from the Louisiana Fifth Circuit Court of Appeal's opinion, *State v. Fisher*, 852 So.2d 1075 (La. App. 5 Cir. 2003).

himself, and asked Powers for permission to search the residence.  Powers consented to a search.

Sergeant Ronald Labarriere testified that he is a member of the Kenner Police Department's tactical service division and is a canine handler.  Labarriere took a narcotics dog into the trailer.  When they reached the bathroom, the dog signaled the officer that it detected drugs in the toilet tank.  Labarriere lifted the tank's lid, and discovered several rock-like objects at the bottom.  Detective Louis took possession of the rocks.  He performed a field test, and it was positive for cocaine.  The officers also seized Fisher's cellular telephone. Fisher was placed under arrest.  Michael Powers was not arrested.

At trial, Powers identified Fisher as his brother-in-law.  He testified that Fisher, along with Fisher's young son, arrived at his trailer in a white BMW between 5:00 and 5:30. Fisher sat on Powers' sofa briefly, then went into the trailer's bathroom. Less than a minute later, Fisher exited the bathroom.  He said he was going to "make a run," and asked Powers to watch his son while he was gone.  Powers agreed, and Fisher left the trailer.  Shortly after Fisher departed, police officers arrived at the trailer.  They told Powers that they believed Fisher had left something at the residence, and that they had Fisher in custody.  Powers testified that the officers asked to search his trailer, and that he gave his consent to a search. The officers ordered Powers to remain in his living room while they searched the premises. At trial, Powers denied knowing there was crack cocaine in his bathroom.  He stated he did not put it there.  He further stated that had he known the cocaine was in the toilet tank, he

would not have allowed police to search the trailer.

Edgar Dunn, an expert in the field of chemical analysis, testified that he tests controlled dangerous substances at the Jefferson Parish Crime Lab.  He stated that he examined samples from State's Exhibit 1, the rocks seized at Michael Powers' trailer.  He testified that the samples were positive for cocaine base or crack cocaine.  He further testified that the total weight of the cocaine was 13.25 grams.

## III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact.  Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we

> have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

## IV.  ANALYSIS

### A.  Claims 7), 10) and 12):  Insufficient Evidence to Support Adjudication as Third-Felony Offender; Unconstitutional Admittance of Hearsay Testimony; Unconstitutionally Denied Right to Jury Trial in Connection with Multiple Offender Adjudication

Fisher argues that the State failed to carry its burden of proving that he was a third-felony offender (claim 7), that he suffered a violation of his constitutional rights when the court admitted hearsay evidence at trial (claim 10), and that he was unconstitutionally denied a jury in connection with his multiple offender adjudication (claim 12). The first two of these claims were raised in connection with Fisher's application for post-conviction relief.[3] The

---

[3]A copy of Fisher's post-conviction application is contained in the State rec., vol. 4 of 6.

third was raised in a supplemental or successive application for post-conviction relief.[4]  The

district court, on February 15, 2005, denied claims 7) and 10), finding they were procedurally

barred under La.C.Cr.P. art. 930.4[5] due to Fisher's failure to raise said claims "in an earlier

proceeding and/or on appeal."[6]  The district court, on March 15, 2005, denied Fisher's

---

[4]A copy of Fisher's second or supplemental post-conviction application is contained in the State rec., vol. 4 of 6.

[5]La. C. Cr. P. Art. 930.4 reads in its entirety:

Art. 930.4. Repetitive applications

A. Unless required in the interest of justice, any claim for relief which was fully litigated in an appeal from the proceedings leading to the judgment of conviction and sentence shall not be considered.

B. If the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief.

C. If the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief.

D. A successive application may be dismissed if it fails to raise a new or different claim.

E. A successive application may be dismissed if it raises a new or different claim that was inexcusably omitted from a prior application.

F. If the court considers dismissing an application for failure of the petitioner to raise the claim in the proceedings leading to conviction, failure to urge the claim on appeal, or failure to include the claim in a prior application, the court shall order the petitioner to state reasons for his failure. If the court finds that the failure was excusable, it shall consider the merits of the claim.

[6]A copy of the district court's February 15, 2005 Order denying claims 7) and 10) is contained in the State rec., vol. 4 of 6, tab 2.

successive claim, claim 12), on the basis of *res judicata*.[7]  Based upon these state court orders, the State argues that Fisher has procedurally defaulted on the instant claims and is therefore prohibited from seeking federal habeas corpus relief.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both independent of the federal claim and adequate to support that judgment.  *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir.1997); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir.1995) (citation omitted).  This "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or habeas review. *Amos*, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim raised in a habeas petition unless the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar.  *Glover*, 128 F.3d at 902.  When the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, it is presumed that the court relied upon the same grounds as the last reasoned state court opinion. *Ylst v. Nunnemaker*, 501 U.S. 797, 802, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).

For this state-imposed procedural bar to prevent review by this federal habeas court,

---

[7]A copy of the district court's March 15, 2005 Order denying claim 12) is contained in the State rec., vol. 4 of 6.

the bar must be independent and adequate.  A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar.  *Amos*, 61 F.3d at 338.  To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases.  *Glover*, 128 F.3d at 902.  A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief.  *Id.*

In the instant matter, the state district court issued the last reasoned opinion.  The state district court, pursuant to La.C.Cr.P. art. 930.4, denied Fisher's claims due to his failure to raise them "in an earlier proceeding and/or on appeal" or as repetitive on the basis of *res judicata*.  Such bases for dismissal have been recognized as independent and adequate.  *See Simmons v. Cain*, 2008 WL 2185422, *4-6 (E.D. La. May 20, 2008) (Berrigan, J.); *Pierce v. Cain*, 2008 WL 1766998, *15 (E.D. La. April 15, 2008) (Berrigan, J.); *Rodriquez v. Cain*, 2007 WL 4522497, *16-19 (E.D. La. Dec. 17, 2007) (Berrigan, J.).[8]  Accordingly, said

---

[8]In his Traverse (rec. doc. 10, pp. 3-4), Fisher argues that his claims should not be procedurally barred because the state court failed to abide by the provisions of La.C.Cr.P. art. 930.4(F) which provides: "If the court considers dismissing an application for failure of the petitioner to raise the claim in the proceedings leading to conviction, failure to urge the claim on appeal, or failure to include the claim in a prior application, the court shall order the petitioner to state reasons for his failure. If the court finds that the failure was excusable, it shall consider the merits of the claim."  According to Fisher, the State cannot rely on a portion of La. C.Cr.P. art. 930.4 to procedurally bar his claims for failing to raise them earlier, yet fail to comply with another portion of Article 930.4 which requires that he be provided with an opportunity to explain why he did not raise his claims earlier.

Fisher's argument in this regard is without merit.  As the court explained in *Simmons*, 2008 WL at *3:

claims are immune from federal review.  *Id.*

A federal habeas petitioner, however, may be excepted from the procedural default rule if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  *Glover*, 128 F.3d at 902 (citation omitted); *Amos*, 61 F.3d at 338-39 (citations omitted).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule.  *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).  The mere fact that petitioner failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default.  *Id.* at 486.

In this case, Fisher has not offered any cause for the default which would excuse the procedural bar imposed by the Louisiana courts.  Further, this court's review of the record does not support a finding that any factor external to the defense prevented Fisher from raising the instant claims in a procedurally proper manner.  The record also does not reflect

---

Although La.C.Cr.P. Art. 930(F) requires a petitioner to explain why he failed to raise a certain issue in an earlier proceeding, the Louisiana Supreme Court has held that an application for post-conviction relief provides the petitioner with an opportunity to explain his failure to raise a claim earlier and allows the court to undertake the informed exercise of his discretion and to determine whether default of the application is appropriate pursuant to LA C.Cr.P. Art. 930.4(F). *State ex rel. Kenneth W. Rice v. State v. Louisiana,* 749 So.2d 650, [99-KH-0496] (La.1999).

any action or inaction on the part of the State which prevented Fisher from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir.1997) (citation omitted).  Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and Fisher has not alleged any actual prejudice.  *Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir.1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir.1977)).

The instant claims are therefore procedurally barred from review by this federal habeas corpus court absent a showing that a fundamental miscarriage of justice will occur if the merits of the claims are not reviewed.  *Hogue*, 131 F.3d at 497 (citation omitted).  To establish a fundamental miscarriage of justice, Fisher must provide this court with evidence that would support a "colorable showing of factual innocence."  *Kuhlmann v. Wilson*, 477 U.S. 436, 454, 106 S.Ct. 2616, 91 L.Ed.2d 364 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.  To satisfy the factual innocence standard, Fisher must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to his guilt.  *Campos v. Johnson*, 958 F.Supp. 1180, 1195 (W.D. Tx.1997) (footnote omitted); *Nobles v. Johnson*, 127 F.3d 409, 423 n. 33 (5th Cir. 1997), *cert. denied*, 523 U.S. 1139, 118 S.Ct. 1845, 140 L.Ed.2d 1094 (1998) (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the

underlying offense.")  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  *Glover*, 128 F .3d at 903.

Fisher does not present and the record does not contain evidence that suggests his actual innocence.  Accordingly, Fisher has failed to overcome the procedural bar to the instant claims.  As such, the claims are procedurally barred and must be dismissed with prejudice for that reason.

## B.  Claim 1): Trial Court Unconstitutionally Failed to Suppress Evidence

Fisher argues that he was arrested without probable cause and, as such, his subsequent statements and evidence subsequently retrieved should have been suppressed as "fruit of the poisonous tree".[9]  This court, however, need not address the merits of the above argument due to the mandate enunciated in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).  In *Stone*, the United States Supreme Court concluded:

> [W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Id.* at 481-482 (footnote omitted).

In interpreting *Stone*, the Fifth Circuit has opined that an "opportunity for full and fair

---

[9]*See* Federal rec., doc. 3, Fisher's supporting memorandum at p. 8.

litigation" means just that: "an opportunity." *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir. 2002), *cert. denied*, 537 U.S. 1196, 123 S.Ct. 1264, 154 L.Ed.2d 1034 (2003) (citing *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir. 1978)).  Even if a defendant fails to take advantage of his opportunity to litigate his motion to suppress, the fact that the opportunity was there suffices for the *Stone* bar to apply.  *Janecka*, 301 F.3d at 320.  Furthermore, the Fifth Circuit has held that the *Stone* bar applies despite an error by the state court in deciding the merits of a Fourth Amendment claim.  *Swicegood v. Alabama*, 577 F.2d 1322, 1324-1325 (5th Cir. 1978).

In the present matter, Fisher does not contend that he was deprived of the opportunity to litigate his Fourth Amendment claim fully and fairly in the state court system.  Rather, his argument addresses his dissatisfaction with the ultimate adverse ruling.

Clearly, the record reflects that a motion to suppress was filed and an evidentiary hearing was held on the matter on April 10, 2000.[10]  Further, the suppression issue was reurged, on appeal, and once again rejected.  *See State v. Fisher*, 852 So. 2d 1075, 1081 (La. App. 5 Cir. 2003).  Lastly, the Louisiana Supreme Court rejected Fisher's argument by denying his writ application.  *State v. Fisher*, 872 So.2d 510 (La. 2004).

In short, Fisher's Fourth Amendment claim is not properly before this court because the requirements set forth in *Stone* have been met through state court proceedings.

---

[10]A transcript of the hearing on the motion to suppress is contained in the State rec., vol. 1 of 6, p. 126.

Accordingly, the instant claim for habeas corpus relief should be denied.

### C.  Claim 2): Trial Court Unconstitutionally Failed to Grant Mistrial

Fisher argues that his constitutional rights were violated when the trial court failed to declare a mistrial because Detective Louis testified to evidence of other crimes.  Fisher points to the following exchange between the prosecutor and Detective Louis:

> Q.  Okay.  Now, in response to the defendant beckoning you or calling you over, what did you do?
>
> A.  That's when I radioed to the other detectives to go ahead and take him down, because it was - - through my investigation I learned that he carried weapons - -[11]

Following the above exchange, defense counsel objected and moved for a mistrial.  The court declined to grant counsel's motion, but provided the following admonition to jurors:

> Ladies and gentlemen, what I want you to do is disregard that last remark about - - I think he said somebody told him or something was known or whatever - - disregard that entire remark, it's not admissible evidence.  And I want you to remember, as I told you before, I want you to make a decision based upon legally admissible evidence, so just take the question about beating a dog and all kind of stuff we talked about, put the whole thing out of your mind and don't wonder what the answer would have been, okay"
>
> Thank y'all very much.[12]

It is well established that federal habeas review is limited to questions of constitutional

---

[11]*See* State rec., vol. 2 of 6, p. 217, lines 21-25.

[12]*See* State rec., vol. 2 of 6, p. 221, lines 9-21.

dimension.  *See generally Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992), *cert. denied*, 508 U.S. 978, 113 S.Ct. 2977, 125 L.Ed.2d 675 (1993); *Castillo v. Johnson*, 141 F.3d 218, 222 and 224 (5th Cir.), *cert. denied*, 524 U.S. 979, 119 S.Ct. 28, 141 L.Ed.2d 788 (1998).  In reviewing a state court evidentiary determination, such as the trial court's determination that a mistrial was not warranted by virtue of Detective Louis' reference to Fisher's possible possession of a weapon, the federal habeas court's role "'is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness.'"  *Andrade v. McCotter* 805 F.2d 1190, 1193 (5th Cir. 1986), *quoting Mattheson v. King,* 751 F.2d 1432, 1445 (5th Cir.1985).  "[T]he erroneous admission of prejudicial testimony justifies habeas corpus relief only when it is "material in the sense of [being a] crucial, critical, highly significant factor."  *Id.* (quotations omitted).

In the instant matter, the court's alleged error in failing to grant a mistrial did not constitute a denial of fundamental fairness, especially in light of the fact that the trial court admonished the jury to ignore Detective Louis' inadmissible reference to Fisher's propensity to carry a weapon.  Accordingly, the instant claim for habeas corpus relief is without merit.

### D.  Claim 3):  Insufficiency of Evidence

Fisher argues the evidence presented at trial was insufficient to sustain his conviction for possession of cocaine with the intent to distribute.  When conducting a post-AEDPA sufficiency of the evidence review, a federal court may grant relief only if it determines that the state court decision rested on an "unreasonable application" of clearly established Federal

law, as determined by the Supreme Court, to the facts of the case. *See* 28 U.S.C. §2254(d)(1).

In its analysis of petitioner's insufficiency of evidence claim, the Louisiana Fifth Circuit Court of Appeal first set forth the applicable Supreme Court law, along with corresponding state law, stating:

> The constitutional standard for testing the sufficiency of the evidence, as enunciated in *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. *State v. Ortiz,* 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, *cert. denied,* 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); *State v. Williams,* 99-223, p. 6 (La.App. 5 Cir. 6/30/99), 742 So.2d 604, 607.

*Fisher*, 852 So.2d at 1078 -1079.

Thereafter, the state appellate court reviewed the elements of the crime for which Fisher was convicted.

> The crime of possession with intent to distribute cocaine requires proof that the defendant knowingly and intentionally possessed the drug, and that he did so with the specific intent to distribute it.  LSA-R.S. 40:967(A)(2); *State v. Manson,* 01-159, p. 16 (La.App. 5 Cir. 6/27/01), 791 So.2d 749, 761; *State v. Snavely,* 99-1223, p. 11 (La.App. 5 Cir. 4/12/00), 759 So.2d 950, 958, *writ denied,* 00-1439 La.2/16/01), 785 So.2d 840.  Guilty knowledge is an essential element to the crime of possession of contraband, and such knowledge may be inferred from the circumstances. *State v. Manson, supra.*  Possession can be either "actual" or "constructive." *State v. Brisban,* 00-3437, p. 8 (La.2/26/02), 809 So.2d 923, 929.
>
> A person not in physical possession of a drug may have constructive possession when the contraband is under the person's dominion and control. *State v. Shieffler,* 00-1166, p. 4 (La.App. 5 Cir. 2/13/02), 812 So.2d 7, 9, *writ*

*denied,* 02-0712 (La.9/13/02), 824 So.2d 1188.   The key factors to be considered in determining whether a defendant exercised dominion and control sufficient to constitute constructive possession are the defendant's knowledge that illegal drugs were in the area, his relations with a person found to be in actual possession, the defendant's access to the area where the drugs were found, evidence of recent drug use by the defendant, the existence of drug paraphernalia, and evidence that the area was frequented by drug users. *Id.; State v. Manson,* 01-159 at pp. 6-7, 791 So.2d at 761.

*Fisher,* 852 So.2d at 1079.

The court then examined the evidence submitted at trial.

The record does not show evidence of actual possession by defendant. It was Detective Louis' testimony that, although he made arrangements to buy cocaine from defendant, he had other officers detain defendant before any transaction took place.   Detective Louis further testified that defendant did not have any drugs on his person at the time of his arrest.   We must consider, then, whether the State proved defendant had dominion and control over the crack cocaine sufficient to support a finding of constructive possession.

Detective Louis testified he received information from a confidential informant that led him to believe defendant was trafficking narcotics.   He telephoned a person he believed to be defendant, using a cell phone number he obtained in the course of his investigation.   During their telephone conversation, defendant agreed to sell cocaine to Louis.   Louis testified that he did not meet defendant in person prior to the telephone call.   Defendant told Louis to meet him at Airline and Filmore Streets.   Louis described to defendant what type of car he would be driving.

Defendant is related to Michael Powers, in whose residence the cocaine was found.   More importantly, defendant had access to the area where the cocaine was found shortly before police discovered it.   These facts prove guilty knowledge. Powers testified that he had no guests in his house other than defendant before the officers arrived, and that he did not place the cocaine in the toilet himself.   The defendant also went into the bathroom almost immediately after arriving at the trailer, and then left the residence less than a minute after exiting the bathroom.   Upon leaving the trailer, defendant seemingly recognized Louis' car, and attempted to motion to him with his

hands.

Defendant argues the evidence points to Michael Powers as the guilty party in this case.  In *State v. Mitchell,* 99-3342, p. 7 (La.10/17/00), 772 So.2d 78, 83, the Louisiana Supreme Court commented:

> On appeal, the reviewing court "does not determine whether another possible hypothesis suggested by a defendant could afford an exculpatory explanation of the events." *State v. Davis,* 92-1623 (La.5/23/94), 637 So.2d 1012, 1020.  Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.  *Id.*

> Powers denied having had any knowledge there was cocaine in the toilet tank.  His wife, the only other resident of the trailer, was at work when the officers arrived.  He testified that, had he known there was cocaine on the premises, he would not have consented to a police search.  The jurors apparently found his testimony credible.

*Fisher*, 852 So.2d at 1079-1080.

Based upon the above reasoning, the court concluded: "[W]e find that, in the light most favorable to the prosecution, the evidence shows beyond a reasonable doubt that defendant possessed the cocaine."  *Fisher*, 852 So.2d at 1080.  The court next examined whether sufficient proof was offered to show that Fisher had specific intent to distribute cocaine.  The state appellate court first examined applicable state law:

> In *State v. Hearold,* 603 So.2d at 735, the Louisiana Supreme Court listed a series of factors that might give rise to a reasonable inference that a defendant had the specific intent to distribute a controlled dangerous substance:

> > (1) whether the defendant ever distributed or attempted to distribute the drug; (2) whether the drug was in a form usually associated with possession for distribution to others; (3) whether the amount of the drug created an inference of an intent to

distribute; (4) whether expert or other testimony established that the amount of drug found in the defendant's possession is inconsistent with personal use only; and (5) whether there was any paraphernalia, such as baggies or scales, evidencing an intent to distribute.

*Fisher*, 852 So.2d at 1080.

The court next examined the evidence presented at trial.

Because there was no exchange of drugs, and no expert testimony regarding the drug trade, the State's primary evidence of defendant's intent to distribute was the telephone call between Louis and defendant. Detective Louis testified that he received information about defendant's drug activity from a confidential informant. The informant gave Louis a telephone number where defendant could be reached. Louis testified that he spoke with defendant over the telephone, and arranged to buy $600 worth of crack cocaine. Louis testified that he never saw defendant until the time of his arrest. The two men arranged to meet at a specific date and time in the area of Filmore and Airline Highway. Louis told defendant he would be driving a red Rx7 automobile, and defendant said he would be in a white BMW with temporary plates. The telephone conversation was not recorded, so the reliability of those facts was dependent upon Louis' credibility.

Defendant argues there was no proof that he was the person with whom Louis spoke over the telephone. There was, however, circumstantial evidence to that effect. Defendant arrived at the agreed-upon location at the agreed-upon time, in the type of car he described to Louis. Defendant's ownership of the white BMW was established by the testimony of Victor Planetta, the owner of Auto World Finance. Defendant went inside of Michael Powers' trailer, then emerged and approached Louis' car, waving his arms as if attempting to flag down the officer. His actions indicate he intended to meet with Louis.

*Fisher*, 852 So.2d at 1080-1081.

Based upon the above, the court concluded: "We find that the telephone call and the circumstantial evidence connecting the call to defendant was sufficient to prove intent to

distribute cocaine.  In accordance, we find the evidence was sufficient to sustain a conviction of possession of cocaine with the intent to distribute." *Fisher*, 852 So.2d at 1081.

This court finds that the above conclusion does not represent an unreasonable application of Supreme Court law to the facts of the case.   Accordingly, Fisher's insufficiency of evidence claim is without merit.

### E.  Claim 4):  Court Unconstitutionally Failed to Quash Multiple Offender Bill

Fisher complains that the trial court erred in failing to quash his multiple offender bill of information because his habitual offender hearing and sentencing were not held within a reasonable time of his original sentencing.  In addressing this claim in connection with Fisher's direct appeal, the Louisiana Fifth Circuit noted the following applicable facts:

> The State filed the habitual offender bill on September 29, 2000.  The defendant was apprised of the allegations in the bill on October 12, 2000.  The trial court imposed defendant's original sentence on December 14, 2000.  Minute entries show the habitual offender hearing was continued six times, and that all of the continuances were on the motion of the State or the court.  Some of those were apparently due to the Department of Corrections' failure to transport defendant to court.  On December 13, 2001, the habitual offender hearing was held.  Defendant made an oral motion to quash, arguing he was prejudiced by the trial court's delay in holding the hearing.  The court denied the motion, and proceeded with the hearing.  The court ultimately found defendant to be a third felony offender.

*Fisher*, 852 So.2d at 1083.

The Sixth Amendment guarantees a defendant in a criminal case the right to a speedy

22

trial. *Barker v. Wingo*, 407 U.S. 514, 519-522, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).[13]

Under *Barker*, 407 U.S. at 530, a court must consider four factors in assessing a speedy trial claim: 1) The length of the delay; 2) The reason for the delay; 3) The defendant's assertion of his right; and, 4) Prejudice to the defendant resulting from the delay.

In the instant matter, almost a year passed between Fisher's original sentencing and multiple-bill sentencing and Fisher did assert his speedy trial or, more appropriately, speedy sentencing right. However, continuances of Fisher's multiple-bill sentencing were not based upon any ill-will or malicious intent on the part of the State. Instead, they were, for the most part, attributable to the State's inability to secure Fisher's transport to the proper jurisdiction. As the trial court noted: "Let the Record reflect that the bulk of the continuances in this case were at the request of the State because of the defendant's absence from the jurisdiction, because of the writs; one case because the sheriff's office was in the process of the moving." *Fisher*, 852 So. 2d at 1084. As such, the court denied Fisher's motion to quash, concluding: "While the continuances were done by the State, I find that they were all done for good cause...." *Id*.

This court finds that the above conclusion on the part of the state court does not represent an unreasonable application of Supreme Court law to the facts of this case, especially in light of Fisher's failure to show how he was prejudiced as a result of the delay

---

[13]It is well-settled that the right to a speedy trial also applies to the time between conviction and final sentencing. *See United States v. Howard*, 577 F.2d 269 (5th Cir. 1978).

between his original sentencing and his multiple-bill sentencing.[14]   Accordingly, the instant claim for federal habeas corpus relief is without merit.

### F.  Claim 5): Imposition of Excessive Sentence

Fisher was originally sentenced to 30 years incarceration.   However, after being adjudicated to be a third felony offender, Fisher's original sentence was vacated and he was sentenced to life imprisonment.   Fisher asserts that the life sentence he received is unconstitutionally excessive.

Generally, if a sentence is within the statutory limits, a federal habeas court will not upset the terms of that sentence unless it is so disproportionate to the offense as to be completely arbitrary and shocking.  *Bonner v. Henderson*, 517 F.2d 135, 136 (5th Cir. 1975); *see also Smallwood v. Johnson*, 73 F.3d 1343, 1347 (5th Cir.), *cert. denied*, 519 U.S. 883, 117 S.Ct. 212, 136 L.Ed.2d 146 (1996) (emphasizing that a federal court will not review a state sentencing without a threshold showing that the sentence is "grossly disproportionate to the offense").   In this case, Fisher's life sentence was within statutory limits.

Fisher argues that even though his life sentence was within statutory guidelines, it was nevertheless excessive because he did not commit a crime of violence.   Further, Fisher

---

[14]Fisher insinuates that he was prejudiced because the delay in sentencing caused him to be sentenced under the wrong version of the habitual offender statute.  *See* Federal rec., doc. 3, Fisher's supporting memorandum at p. 15.   However, it is the version of the statute in effect at the time the crime is committed, not the one in effect at the time of sentencing, which controls for purposes of determining which version applies to a particular defendant.   Thus, the delay in sentencing Fisher as a multiple offender had no impact on the version of the habitual offender statute which was applicable to him.

suggests that the state trial court mistakenly believed that it had no discretion as to the imposition of a life sentence when, under state law, the court could have made a downward departure.

In addressing this claim in connection with Fisher's direct appeal, the Louisiana Fifth Circuit Court of Appeal first examined applicable law.

> The Eighth Amendment to the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. A sentence is considered excessive if it is grossly disproportionate to the offense or imposes needless and purposeless pain and suffering. *State v. Lobato,* 603 So.2d 739, 751 (La.1992); *State v. Munoz,* 575 So.2d 848, 851 (La.App. 5 Cir.1991), *writ denied,* 577 So.2d 1009 (La.1991). It is presumed that a mandatory minimum sentence under the Habitual Offender Law is constitutional. *State v. Williams,* 01-1007, p. 11 (La.App. 5 Cir. 2/26/02), 811 So.2d 1026, 1032. However, if a trial court finds that an enhanced punishment mandated by LSA-R.S. 15:529.1 makes "no measurable contribution to acceptable goals of punishment" or that the sentence amounts to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," the trial court has the option and duty to reduce such sentence to one that would not be constitutionally excessive. *State v. Dorthey,* 623 So.2d 1276, 1280 (La.1993).

*Fisher*, 852 So.2d at 1085.

With the above law in mind, the state appellate court examined the circumstances pursuant to which the trial court sentenced Fisher as a third felony offender, addressing Fisher's argument to the effect that the court should have departed from the mandatory life sentence.

> The trial court imposed the habitual offender sentence as follows:
> the Court is of the opinion that under 15:529.1, because it uses

25

the word "shall," the Court has no discretion.   The Court must...sentence the defendant to imprisonment for the remainder of his natural life without benefit of parole, probation or suspension of sentence.

Defendant maintains that the trial court should have deviated downward from the minimum sentence in his case.  He argues the trial judge was unaware that the jurisprudence allows the district court to deviate from the statutory minimum sentence, and that the sentence imposed was, therefore, unfair.  He moves this Court to vacate his sentence and remand for re-sentencing, with instructions to the trial judge to consider whether defendant's circumstances warrant a downward departure from the mandatory life sentence.

A trial court may only depart from the mandatory sentence if it finds clear and convincing evidence that would rebut the presumption of constitutionality.  *State v. Cho,* 02-274, p. 28 (La.App. 5 Cir. 10/29/02), 831 So.2d 433, 454, *writ denied,* 02-2874 (La.4/4/03), 840 So.2d 1213.  The burden is on the defendant to rebut the presumption of constitutionality by showing:

> [h]e is exceptional, which in this context means that because of unusual circumstances this Defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

*Id.* (quoting *State v. Young,* 94-1636, pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 528, *writ denied,* 95-3010 (La.3/22/96), 669 So.2d 1223).  The Louisiana Supreme Court has cautioned that downward departures from the mandatory minimum sentences should be made only in rare cases.  *State v. Lindsey,* 99-3256, p. 5 (La.10/17/00), 770 So.2d 339, 343.

Defendant did not move the trial court to consider a lesser sentence under *State v. Dorthey, supra.*  The trial judge was correct in stating that the Habitual Offender Law gives the sentencing court no discretion in cases where a life sentence is mandatory.  His failure to mention *Dorthey* does not demonstrate that the judge was ignorant of the jurisprudence.  He was simply not asked by defendant to address that issue.  In any case, defendant does not show the special circumstances necessary to rebut the presumption of constitutionality of his life sentence.

This Court has held that mandatory life sentences for distribution of cocaine under the Habitual Offender Law are not constitutionally excessive. In *State v. Robertson,* 99-1029 (La.App. 5 Cir. 2/29/00), 756 So.2d 1148,

26

1149-1150, this Court affirmed the life sentence of a third felony offender whose underlying conviction was for possession of cocaine with intent to distribute.  This Court cited the defendant's extensive criminal history.

At the time of the original sentencing in the instant case, the trial judge commented that he had reviewed defendant's pre-sentence investigation report and his extensive criminal record, and concluded that defendant, if released from prison, would likely commit another crime.

Based on the foregoing, we find this argument lacks merit.

*Fisher*, 852 So.2d at 1085-1086.

This court finds that the above-reasoning does not constitute an unreasonable application of pertinent federal law to the facts of this case.  *See Williams*, *supra*. Accordingly, Fisher's claim for habeas relief based upon the alleged excessiveness of his sentence is without merit.

### G.  Claim 6): Ineffective Assistance of Appellate Counsel

Fisher argues that appellate counsel was unconstitutionally ineffective due to counsel's failure to heed his request and present, on appeal, all of the claims set forth in the instant habeas application.  The seminal Supreme Court decision regarding ineffective assistance of counsel is *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 2069, 80 L.Ed.2d 674 (1984), wherein the Court held that in order to prove that counsel was unconstitutionally ineffective, petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.  To prove that appellate counsel

was ineffective, petitioner must satisfy the same two-prong test enunciated in *Strickland*. *See Busby v. Dretke*, 359 F.3d 708, 714 (5th Cir.), *cert. denied*, 541 U.S. 1087, 124 S.Ct. 2812, 159 L.Ed.2d 249 (2004) (citations omitted*)* ("The familiar *Strickland* framework applies to a prisoner's claim that his appellate counsel was ineffective for failing to raise a certain issue on appeal.").

In *Smith v. Robbins,* 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (citation omitted), the Supreme Court held that appellate counsel "need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal."  In order to prove that counsel was unconstitutionally ineffective in failing to raise particular claims, a petitioner must show "that the appeal would have had, with reasonable probability, a different outcome" if counsel had raised the requested claims.  *U.S. v. Dovalina*, 262 F.3d 472, 474-475 (5th Cir. 2001).

This court finds that Fisher, in the instant matter, has failed to meet the above standard of proof.   Accordingly, his claim for habeas corpus relief based upon the alleged ineffectiveness of appellate counsel is without merit.

### H.  Claim 7):  Insufficient Evidence to Adjudicate Him a Third-Felony Offender

Fisher argues that there was insufficient evidence to adjudicate him to be a third-felony offender because the State failed to prove that his prior guilty pleas were informed and voluntary.  As noted earlier, the instant claim is procedurally barred.[15]  Alternatively, Fisher's

---

[15]*See* discussion *supra* at pp. 8-14.

claim is without merit.

The Supreme Court has made clear that generally, "federal postconviction relief is [not] available when a prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the petitioner is no longer in custody." *Lackawanna County District Attorney v. Coss*, 532 U.S. 394, 396, 121 S.Ct. 1567, 149 L.Ed.2d 608 (2001).  The Court held:

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid....  If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

*Id*. at 403-404.[16]

As set forth above, Fisher cannot challenge the constitutionality of his prior convictions for purposes of attacking the enhanced sentence he is presently serving. Accordingly, the instant claim for habeas relief is without merit.

---

[16]There are two exceptions to the above general rule.  One exception is with respect to habeas petitions challenging an enhanced sentence "on the basis that the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment...."  *Id*. at 404.  The second exception might lie, albeit in a rare circumstance, where through no fault of his own, there was no channel of review actually available to petitioner through which he might have timely challenged his prior conviction.  *Id*. at 405-406.  Neither of these exceptions are applicable in the instant situation.

### I) Claim 8:  Judge Acted as Prosecutor at Multiple Offender Adjudication

Fisher argues that his constitutional rights were violated when the trial judge improperly took on the role of prosecutor in connection with his multiple offender adjudication.  According to Fisher, the trial judge was unconstitutionally unfair when the "State clearly agreed with the Defense that the Petitioner had never been properly informed of his rights [in connection with a prior conviction]", but the trial court refused to accept this fact, insisting that petitioner's rights had been "included in an obscure and vague statement found in the record."[17]

In *Derden v. McNeel*, 978 F.2d 1453, 1459 (5th Cir. 1992) (citations omitted), the Fifth Circuit stated:  "The conduct of a trial judge can violate due process only if the judge so favors the prosecution that he appears to predispose the jury toward a finding of guilt or to take over the prosecutorial role."  Obviously, because there was no jury involved in Fisher's multiple offender adjudication, the trial judge, by virtue of his alleged biased behavior, could not have "predispose[d] the jury toward a finding of guilt".  Further, a review of Fisher's multiple offender adjudication transcript reflects that the judge did not "take over the prosecutorial role".

First, contrary to Fisher's representation, the State did not agree with defense counsel that Fisher, in connection with an earlier conviction, had not been apprised of his rights.  Specifically, defense counsel argued: "[N]owhere in the *Boykin* and nowhere in the colloquy

---

[17]*See* Federal rec., doc. 3, Fisher's supporting memorandum at p. 26.

in the transcript is there any indication that the Court informed [Fisher] prior to taking his plea that if he went to trial, he had the right to remain silent."[18]   In response, the court questioned the assistant district attorney, inquiring: "[W]here is the evidence that Mr. Fisher was advised of his right to remain silent?"[19]   The State, in response to the court's inquiry, did not, as petitioner suggests, acquiesce that Fisher was not advised of his right to remain silent. Instead, the assistant district attorney informed: "I see a waiver on the transcript form, a waiver of rights."[20]

Thereafter, the court examined the transcript form, finding that it reflected Fisher's affirmative response when he was asked: "Have you been advised of your constitutional rights, both by [defense counsel] and by [the court]."[21]   In response to defense counsel's assertion that the above colloquy was insufficient, the court asked for the assistant district attorney's opinion on the matter.  The assistant district attorney opined that he thought defense counsel informing Fisher of his rights "should be sufficient".[22]   The court, however, disagreed, stating that the court, not just defense counsel, "has got to be aware of and make sure and got to advise Mr. Fisher of what his rights are."[23]

---

[18]*See* State rec., vol. 4 of 6, multiple bill transcript at p. 12, lines 19-24.

[19]Multiple bill transcript at p. 12, lines 30-32.

[20]Multiple bill transcript at p. 13, lines 2-4.

[21]Multiple bill transcript at p. 18, lines 4-10.

[22]Multiple bill transcript at p. 18, line 26.

[23]Multiple bill transcript at p. 18, lines 28-30.

After listening to defense counsel's argument, the State's counter-argument, and reviewing the pertinent documentation, the court noted that Fisher had completed the waiver form which advised him of his rights, that the judge questioned Fisher and defense counsel about Fisher's rights, that defense counsel informed that he had advised Fisher of his rights, and that Fisher acknowledged that both defense counsel and the court had advised him of his rights.[24]  The court then concluded that Fisher was "sufficiently advised of his rights."[25]

Based upon the above, this court finds that the trial court did not unconstitutionally "take over the prosecutorial role" in connection with Fisher's multiple-offender adjudication. Accordingly, the instant claim for habeas corpus relief is without merit.

### J) Claim 9: Denied Fair Trial Because Judge Could Not Be Fair and Impartial

Fisher argues that the trial judge, Judge Ronald Bodenheimer, was not fair and impartial because he was working as a narcotics informant for the Jefferson Parish Sheriff's Office, the same law enforcement agency that "orchestrated" Fisher's drug arrest.  Fisher also notes that Judge Bodenheimer was "convicted by Federal Authorities with several other crimes committed while in his capacity as Judge and is now serving federal time."[26]  Fisher claims that the above facts call into question the judge's ability to impartially preside over his case.

---

[24]Multiple bill transcript at p. 18, lines 31-32; p. 19, lines 1-9.

[25]Multiple bill transcript at p. 20, lines 29-30.

[26]*See* Federal rec., doc. 3, Fisher's supporting memorandum at p. 31.

Due Process "requires a fair trial in a fair tribunal...before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904-905, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997) (quotation and citation omitted). Accordingly, a judicial officer incapable of presiding in such a manner violates the due process rights of the defendant who suffers the resulting effects of the judicial officer's bias. *Id*.

In *Bigby v. Dretke*, 402 F.3d 551, 558 (5th Cir. 2005) (quotation omitted), the Fifth Circuit made clear that the burden of proving bias on the part of an adjudicator "is not lightly established." The court explained that the burden is heavy "because '[o]rdinarily, we presume that public officials have properly discharged their official duties.'" *Id*., *quoting Bracy*, 520 U.S. at 909. The court explained that a petitioner must overcome "two strong presumptions: (1) the presumption of honesty and integrity of the adjudicators; and (2) the presumption that those making decisions affecting the public are doing so in the public interest." *Id.* (quotation omitted). An adjudicator breaches a litigant's right to due process when: "(1) the decision maker has a direct personal, substantial, and pecuniary interest in the outcome of the case; (2) an adjudicator has been the target of personal abuse or criticism from the party before him; and (3) a judicial or quasi judicial decision maker has the dual role of investigating and adjudicating disputes and complaints." *Id*. at 559.[27]

---

[27]The Fifth Circuit proceeded to provide examples of cases wherein the Supreme Court had determined that a litigant's due process rights had been violated by virtue of a judicial officer's bias. *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 824-25,106 S.Ct. 1580, 89 L.Ed.2d 823 (1986) (holding that the Justice's interest in the case was "direct, personal,

In addressing the instant claim in connection with Fisher's post-conviction application, the state district court reasoned:

> Whether the trial judge was an informant in other cases is irrelevant to defendant's case. Furthermore, the defendant must show some fact that leads to the conclusion that the judge has a personal interest or is influenced to decide the case or to bring about a decision, for or against one of the parties, without reference to the law and evidence. [Citations omitted.] In the instant matter, defendant has not demonstrated any facts to lead to the conclusion that Judge Bodenheimer acted with personal interest or bias in this case.... Therefore, the defendant is not entitled to the relief sought.[28]

This court finds that the above finding of the state district court does not represent an unreasonable application of pertinent law to the facts of this case. Accordingly, the instant claim for habeas corpus relief is without merit.

### K) Claim 10: Trial Court Unconstitutionally Permitted Hearsay Testimony

Fisher argues that the trial court erred in allowing hearsay testimony to be admitted at trial. The testimony at issue was elicited by the assistant district attorney from Detective John Louis.

---

substantial, [and] pecuniary" and concluding that his participation in the case "violated appellant's due process rights") (internal quotations and citation omitted) (alteration in original); *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (reasoning that "experience teaches that the probability of actual bias on the part of the judge ... is too high to be constitutionally tolerable" in cases in which the judge "has been the target of personal abuse or criticism from the party before him") (citations omitted); *In re Murchison,* 349 U.S. 133, 139, 75 S.Ct. 623, 99 L.Ed. 942 (1955) (holding that it was a violation of due process for one adjudicator to preside as the grand jury and judge for the same defendants).

*Bigby*, 402 F.3d at 559.

[28]A copy of the state district court's February 15, 2005 Order denying Fisher post-conviction relief is contained in the State rec., vol. 4 of 6.

> BY MR. BATES [Assistant District Attorney]:
> Q.  Detective, can you relate to the ladies and gentlemen of the jury the circumstances causing you to come into contact with the defendant, Henry Fisher.
> A.  Yes.  I had received information that Mr. Fisher was distributing crack cocaine in the City of Kenner....[29]

Defense counsel objected to the above hearsay testimony and his objection was sustained, with the court admonishing the witness not to "tell us what anybody told you."[30]

Fisher also complains about Detective Louis' testimony to the effect that through his investigation, he learned that Fisher "carried weapons".  This objectionable testimony was the subject matter of Fisher's second claim[31] and the trial court, in response to the objectionable remark, admonished the jury to disregard it.[32]

As noted earlier, the instant claim, that the court unconstitutionally allowed the admission of hearsay testimony, is procedurally barred.[33]  Further, as the court observed in its discussion of Fisher's second claim, in reviewing a state court's evidentiary ruling, a federal habeas court's role "'is limited to determining whether a trial judge's error is so extreme that it constituted denial of fundamental fairness.'" *Andrade*, 805 F.2d at 1193, *quoting Mattheson*, 751 F.2d at 1445.  In light of the fact that the court sustained defense counsel's objection to Detective Louis' hearsay testimony and admonished the jury to ignore

---

[29]*See* State rec., vol. 2 of 6, p. 212, lines 4-9.

[30]*See* State rec., vol. 2 of 6, p. 212, lines 15-27.

[31]*See* discussion *supra* at pp. 16-17.

[32]*See* State rec., vol. 2 of 6, p. 221, lines 9-21.

[33]*See* discussion *supra* at pp. 8-14.

35

Louis' testimony regarding what "somebody told him or something [that] was known"[34], the court finds that the trial court's alleged evidentiary errors did not constitute a denial of Fisher's right to fundamental fairness.

### L) Claim 11: Ineffective Assistance of Trial Counsel

As noted in connection with Fisher's argument that appellate counsel was ineffective, in *Strickland v. Washington*, 466 U.S. 668, 697, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Court held that in order to prove that counsel was unconstitutionally ineffective a petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense.  If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Fisher argues that counsel failed to perform an adequate investigation in that he should have produced witnesses to testify that his brother-in-law, in whose home the pertinent drugs were uncovered, was a known drug user and, at the time of Fisher's arrest, was under house arrest.  However, the failure to call witnesses to offer testimony at trial is not *per se* prejudicial to the point of warranting habeas relief.  *See generally Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) ("complaints of uncalled witnesses are not favored, [in federal habeas review] because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely

---

[34]*See* discussion *supra* at p. 16.

speculative").  In *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985), the Fifth Circuit noted that for a petitioner to show prejudice under *Strickland*, he must show that the testimony of the witnesses would have been favorable and that the witnesses would have testified at trial.  Petitioner must show a reasonable probability that the uncalled witnesses would have made a difference in the result.  *Alexander*, 775 F.2d at 603.  There is a strong presumption that the failure of petitioner's counsel to call witnesses is a strategic choice. *Strickland*, 466 U.S. at 689-90, 104 S.Ct. at 2065-66.

In the instant case, Fisher has clearly failed to satisfy his heavy burden of proof.  He has failed to even identify the prospective witnesses, much less shown that their testimony "would have made a difference in the result."

Fisher next complains that counsel was ineffective due to his failure to file a motion to recuse the trial judge.  However, as noted above, there was no valid basis for seeking the judge's recusal.[35]  Accordingly, counsel, in this regard, was not deficient, nor did Fisher suffer any prejudice.

Fisher next contends that counsel was ineffective in failing to put on a defense on his behalf.[36]  Specifically, Fisher accuses counsel of failing to pursue an entrapment defense and an actual innocence defense.  However, a review of defense counsel's cross-examination of

---

[35]*See* discussion *supra* at pp. 32-34.

[36]Fisher does not set forth an argument supporting the instant claim in his memorandum supporting his federal habeas corpus petition.  He does, however, set forth a supporting argument in connection with his state court proceedings.  *See* State rec., vol. 4 of 6, tab 1.  Accordingly, the court shall examine his state court pleading for the purpose of determining the basis of the instant claim.

Detective Louis, specifically, counsel's questions regarding the lack of any recorded telephone conversations between Louis and Fisher regarding the planned drug deal,[37] along with his questioning of Michael Powers regarding the drugs uncovered in his home,[38] clearly reflect that counsel was, in fact, highlighting the weaknesses in the State's case against Fisher.  The fact that the jury found the weaknesses insufficient to constitute reasonable doubt does not render counsel's performance in this regard unconstitutionally ineffective.

Finally, Fisher, in his original supporting memorandum, argues that counsel was ineffective in failing to file a motion to quash the multiple bill based upon the deficiencies in his prior convictions.  However, in its response (rec. doc. 9, p. 33), the State notes that contrary to Fisher's assertion, defense counsel did, in fact, file a motion to quash based upon the alleged deficiencies in Fisher's prior convictions.[39]  In his Traverse (rec. doc. 10, p. 17), Fisher acknowledges that the State is correct, that trial counsel did file a motion to quash and, as such, Fisher "respectfully abandons this, and only this, one particular issue of the ineffective assistance claim."

### M) Claim 12:  Denied Jury in Connection with Habitual Offender Adjudication

Fisher argues that his constitutional right to trial by jury was violated when he was adjudicated to be an habitual offender without the facts being presented to a jury for consideration.  The instant claim, as noted earlier, is procedurally barred.  Further, it is

---

[37]*See* State rec., vol. 2 of 6, pp. 248-256.

[38]*See* State rec., vol. 2 of 6, pp. 305-318.

[39]*See* State rec., vol. 1 of 6, p. 86.

without merit.  The Supreme Court, in *Blakely v. Washington*, 542 U.S. 296, 301, 124 S.Ct. 2531, 2536, 159 L.Ed.2d 403 (2004), *quoting Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), reiterated that "'the fact of a prior conviction'", the factual determination made by a trial judge in connection with an habitual offender adjudication, is specifically excluded from the requirement that "'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury'". Accordingly;

**RECOMMENDATION**

It is hereby **RECOMMENDED** that the instant petition of Henry Fisher for habeas corpus relief be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this   12th   day of    November   , 2008.


LOUIS MOORE, JR.
United States Magistrate Judge